# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ANTHONY DOBSON and JESSICA DOBSON,** : | CIVIL ACTION NO. 1:07-CV-1743 |
| **Plaintiffs** : | (Judge Conner) |
| v. : | |
| **COMMONWEALTH FUNDING GROUP, INC., MATT GISLER, and EQUIFIRST CORPORATION,** : | |
| **Defendants** : | |

## MEMORANDUM

Plaintiffs Anthony and Jessica Dobson (collectively "plaintiffs") bring this action alleging unfair and deceptive business practices in relation to their purchase of a home in Portage, Pennsylvania. Defendants have filed two motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. (See Docs. 41, 45.) For the reasons that follow, both motions will be granted.

I. **Statement of Facts**

The material facts underlying this matter are almost wholly undisputed.[1] In the spring of 2006, plaintiffs retained the services of defendants Commonwealth Funding Group, Incorporated ("CFG") and Matt Gisler ("Gisler") in order to assist

---

[1] In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiffs, who are the nonmoving party. See infra Part II. However, plaintiffs have left undisputed nearly all of the material facts in this matter. Local Rule 56.1 requires the nonmoving party's statement of facts to respond to the numbered paragraphs set forth in the moving party's statement, and to "include references to the parts of the record that support the statements." L.R. 56.1. Plaintiffs disregard this requirement, and their responsive statements of fact are replete with nothing more than bald denials. (See Docs. 57 at 2-16.) The Rule 56.1 statement that plaintiffs filed in response to defendant Equifirst Corporation's summary judgment briefing contains ninety-six numbered paragraphs and not a single citation to the record; virtually all of the numbered paragraphs simply state, "Denied. The exhibits speak for themselves in their entirety." (See Doc. 57.) The Rule 56.1 statement that plaintiffs filed in response to defendants Commonwealth Funding Group, Incorporated and Matt Gisler's motion for summary judgment contains eighty-five numbered paragraphs and zero citations to the record; again, the majority of these paragraphs contain no more than the words, "Denied. The exhibits speak for themselves in their entirety." (See id.)

The purpose of Local Rule 56.1 is obvious: it enables the court to identify contested facts expeditiously and prevents factual disputes from becoming obscured by a lengthy record. The record presented herein contains numerous closing documents, disclosures exchanged by the parties during negotiation, and deposition testimony; it is not the responsibility of the court to scour this record searching for genuine factual disputes. See Doeblers' Pa. Hybrids, Inc. v. Doebler, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (internal quotations omitted). Therefore, with the exception of those paragraphs legitimately outside plaintiffs' knowledge, the court will adopt defendants' statements of fact in *toto*. See L.R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); see also Harrison v. Ammons, Civ. A. No. 1:05-CV-2323, 2009 WL 2588834, at *1 n.1 (M.D. Pa. Aug. 19, 2009) (Conner, J.) (adopting moving party's statement of facts when nonmovant failed to comply with Local Rule 56.1); United States ex rel. Paranich v. Sorgnard, 286 F. Supp. 2d 445, 447 n.3 (M.D. Pa. 2003) (Conner, J.) (same), aff'd, 396 F.3d 326, 330 & n.5 (3d Cir. 2005).

2

them in financing the purchase of a new home.  (Doc. 42 ¶ 5; Doc. 57 at 2 ¶ 5.)  CFG is a mortgage brokerage licensed by the Pennsylvania Department of Banking.  (Doc. 46 ¶ 5; Doc. 57 at 10 ¶ 5.)  At the time in question, Gisler was branch manager of CFG's office in Johnstown, Pennsylvania.  (Doc. 46 ¶ 6; Doc. 57 at 10 ¶ 6.)

Shortly after they retained his services, Gisler collected plaintiffs' credit information and set about soliciting potential creditors.  (See Doc. 46 ¶¶ 11-15; Doc. 57 at 11 ¶¶ 11-15.)  Three lenders in particular were contacted—Homecoming Financial, Decision One, and defendant Equifirst Corporation ("Equifirst").  (Doc. 48, Ex. A at 23-24.)  Each company offered similar financing options based upon plaintiffs' credit history:[2]  (1) a "fixed rate" option featuring an unchanging interest rate over a thirty-year term, or (2) an "adjustable rate" option requiring a comparatively lower interest rate for the loan's first two years, followed by a twenty-eight year term in which the rate on the note would be subject to periodic adjustment.  (See Doc. 42 ¶¶ 38-39; Doc. 46 ¶ 17; Doc. 48, Ex. A at 23-24; Doc. 57 at 4 ¶¶ 38-39; id. at 12 ¶ 17.)  Gisler selected Equifirst to fund the loan.  (Doc. 46 ¶ 18; Doc. 57 at 12 ¶ 18.)

---

[2] According to Gisler, Anthony Dobson's credit score was 606, rendering him a "subprime" applicant.  (Doc. 48, Ex. A at 15-16.)  Plaintiffs sought financing only in Anthony Dobson's name because Jessica Dobson was unemployed when the couple applied for the loan.  (See id. at 16-17.)

3

Over the next several weeks, Gisler spoke with plaintiffs on over twenty occasions.[3] (Doc. 42 ¶ 36; Doc. 46 ¶ 9; Doc. 57 at 4 ¶ 36; id. at 11 ¶ 9.) He specifically explained the two financing options offered by Equifirst, and he discussed the ramifications of the couple's credit history. (See Doc. 42 ¶ 38; Doc. 46 ¶ 24; Doc. 57 at 4 ¶ 38; id. at 12 ¶ 24.) Although plaintiffs initially told Gisler that they would prefer to obtain a fixed rate mortgage, (see Doc. 46 ¶ 23; Doc. 48, Ex. A at 14-15; Doc. 57 at 12 ¶ 23), Gisler testified that over time the adjustable rate option became more attractive to them. He explained:

> GISLER: [W]hen we first talked, she [Jessica] was very adamant about a fixed-rate loan. . . .
> QUESTION: Did that at some point change?
> GISLER: Yes.
> QUESTION: When did that change?
> GISLER: We had a conversation several weeks into the loan process. . . . And we were going over the numbers and the payments. And at that point, she—we had discussed about her credit score at the time. . . . And so I said, here's your rate at a fixed rate for 30 years, here's your payment. Here's an option. And I said, I know . . . you wanted a fixed [rate], but here's your option. There are two—there is the 2/28, and that's fixed for two years and then adjustable. The payment is slightly lower than on the fixed rate. She then relayed to me that she wasn't planning on staying in the home—or keeping that loan, excuse me, for an extended amount of time, more than two years. So that's where the conversation went as far as, well, why would I pay the higher rate for two

---

[3] Gisler worked most closely with Jessica Dobson, with whom he had over twenty different conversations prior to the closing date. Gisler spoke with Anthony Dobson on approximately two to three occasions during this same period. (See Doc. 42 ¶¶ 35-36; Doc. 46 ¶ 9; Doc. 57 at 4 ¶¶ 35-36; id. at 11 ¶ 9.)

> years if I'm just going to plan on refinancing after I get my credit back to where it should be.

(Doc. 48, Ex. A at 14-16.) According to Gisler, the Dobsons intended to improve their credit score over the two years following their purchase, and to refinance the loan once their score was sufficiently enhanced. (Doc. 48, Ex. A at 16, 60.) Plaintiffs baldly deny that they made any such representations, (see Doc. 57 at 12 ¶ 27), but they admit that they voluntarily selected the adjustable rate mortgage option

offered by Equifirst, (see Doc. 50, Ex. F ¶ 16[4]). Gisler thereafter submitted a loan application on plaintiffs' behalf for an adjustable rate mortgage in the amount of $87,000. (Doc. 46 ¶ 21; Doc. 57 at 10 ¶ 4.)

On June 28, 2006, plaintiffs closed on the purchase of their home. (Doc. 46 ¶ 7; Doc. 57 at 10 ¶ 7.) Neither Gisler or any representative from Equifirst was

---

[4] In support of its motion for summary judgment, Equifirst relies upon several admissions secured via Federal Rule of Civil Procedure 36. Rule 36 provides, *inter alia*, that "[a] party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . facts, the application of law to fact, or opinions about either . . . ." FED. R. CIV. P. 36(a)(1). Admissions obtained pursuant to Rule 36 may thereafter be used as proof in support of a motion for summary judgment. See FED. R. CIV. P. 56(c); 8A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2264, at 569 (2d ed. 1994); see also Airco Indus. Gases, Inc. v. Teamsters Health & Welfare Pension Fund of Phila. & Vicinity, 850 F.2d 1028, 1036 n.9 (3d Cir. 1988). Facts or opinions which a party admits are considered conclusive and binding. FED. R. CIV. P. 36(b) ("A matter admitted under this rule is conclusively established . . . ."); see also Airco Indus., 850 F.2d at 1037 (explaining that a Rule 36 admission whose meaning is certain is "an unassailable statement of fact that narrows the triable issues in the case"). By leave of court, however, a party may move to withdraw or amend its admissions when so doing will advance "presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." FED. R. CIV. P. 36(b). In this way, a party that makes a damaging admission through error or inadvertence has a means by which to correct that mistake. A party's failure to move for withdrawal or amendment under Rule 36(b), however, "operate[s] to waive any objection to the truth of [the admission's] contents." Airco Indus., 850 F.2d at 1037.

In the instant matter, it is undisputed that Equifirst served plaintiffs with requests for admission on June 27, 2008, and that plaintiffs were required to respond on or before July 27, 2008. (See Doc. 50, Ex. F; see also Doc. 42 at 4 n.2; Doc. 43 at 9 n.4.) Plaintiffs acknowledge that they did not deliver a timely response. (See Doc. 65.) Plaintiffs also never sought leave of court in order to withdraw or amend their admissions under Rule 36(b). As a result, the matters detailed in Equifirst's requests for admission are deemed conclusively admitted. See Airco Indus., 850 F.2d at 1036-37; Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).

6

present at the closing; rather, plaintiffs hired a third party, Anchor Realty Services ("Anchor"), to perform the necessary settlement services. (See Doc. 42 ¶¶ 13-14; Doc. 57 at 3 ¶ 13-14.) Prior to executing the adjustable rate mortgage note, an Anchor employee confirmed plaintiffs' understanding that they were receiving an adjustable rate mortgage. (See Doc. 46 ¶ 67; Doc. 57 at 15 ¶ 67.) In addition, plaintiffs signed numerous documents that visibly indicated that their loan was of the adjustable rate variety.[5] (See Doc. 42 ¶¶ 7-8, 17-18, 21; Doc. 46 ¶¶ 50-51, 57; Doc. 57 at 2-3 ¶¶ 7-8, 17-18, 21; id. at 14 ¶¶ 50-51, 57.) Plaintiffs acknowledge that they reviewed each of the documents that they signed and had an opportunity to pose questions if they so desired. (Doc. 42 ¶ 88; Doc. 57 at 9 ¶ 88.) Plaintiffs concede, however, that they asked few if any questions and voluntarily executed all documents required of them to close the purchase. (See Doc. 42 ¶ 88; Doc. 57 at 9 ¶ 88.)

At some point subsequent to the closing date, plaintiffs grew unhappy with the terms of their adjustable rate mortgage and commenced the instant litigation.

---

[5] Among the numerous documents reviewed and executed by plaintiffs at the closing were the following: (1) an "Adjustable Rate Note," which states that the applicable interest rate "may change on July, 2008, and on that day every sixth month thereafter"; (2) a "Variable Rate Mortgage Disclosure" form, which "describes the features of the adjustable rate mortgage," including the manner in which the rate may change; (3) a "Uniform Residential Loan Application," which stated that the "loan would be secured by [a] 30-year conventional, adjustable rate mortgage (ARM) with an interest rate of 9.900%"; (4) an "Adjustable Rate Rider," which provides, "This note contains provisions allowing for changes in the interest rate and the monthly payment"; and (5) a "Truth-in-Lending" statement disclosing that the type of loan plaintiffs were receiving was an adjustable rate mortgage. (Doc. 42 ¶¶ 7-8, 17-18, 21; Doc. 46 ¶¶ 50-51, 57.)

Plaintiffs' complaint contains twenty-six counts, six of which state a cause of action arising under federal law. (See Doc. 23.) The crux of these allegations is that plaintiffs were seeking a fixed rate mortgage but were somehow tricked into executing a mortgage with an adjustable rate. (See Doc. 57 at 19-21.) In plaintiffs telling, they "were never advised that they were in fact receiving an adjustable rate mortgage." (Id. at 23.) Twenty-four of the twenty-six counts were voluntarily waived during discovery, leaving only two claims for the court's disposition. (See id. at 22.) The first of these asserts a federal cause of action against Equifirst for purported violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691; the second alleges violations under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 PA. STAT. ANN. §§ 201-1 to -9.3. On September 2, 2008, defendants moved for summary judgment on both claims. (See Docs. 41, 45.) The motions have been fully briefed and are ripe for disposition.

**II.     Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the

nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### III. Discussion

The sole federal question pending before the court concerns Equifirst's alleged violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691. The ECOA requires that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." § 1691(d)(1). Federal regulations envisage three potential actions a creditor may take in response to a completed credit application: (1) an approval, (2) a counteroffer, or (3) an "adverse action." 12 C.F.R. § 202.9.[6] Under the ECOA, a "counteroffer" is defined as an offer to extend credit "in a different amount, or on other terms" than those requested by the applicant. 12 C.F.R. § 202.2(c)(1)(i); see also Ricciardi v. Ameriquest Mortgage Co., 164 F. App'x 221, 224 (3d Cir. 2006); Siffel v. NFM, Inc., Civ. A. No. 07-cv-05152-JF, 2009 WL 1783523, at *2 (E.D. Pa. June 23, 2009).

---

[6] An "adverse action" on the credit application is defined as "[a] refusal to grant credit in substantially the amount or on substantially the terms requested in an application unless the creditor makes a counteroffer (to grant credit in a different amount or on other terms) and the applicant uses or expressly accepts the credit offered." 12 C.F.R. § 202.2(c)(1)(i). Plaintiffs admit that no "adverse action" was taken for which the ECOA entitled them to notice. (Doc. 50, Ex. F ¶ 6.)

9

The instant plaintiffs contend that Equifirst failed to provide proper notification of a counteroffer.[7] (See Doc. 23 ¶ 55.) Specifically, plaintiffs argue that they requested a fixed term mortgage, but were instead offered an adjustable rate mortgage at the June 28, 2006 closing. (See Doc. 57 at 23-24.) According to plaintiffs, "[h]ad [they] been aware of the adjustable rate, they would have rejected" the loan. (Id. at 24.) These assertions are belied by the summary judgment record, however, which indicates that plaintiffs initially conveyed to Gisler their preference to obtain a fixed rate loan; that Gisler explained the advantages and drawbacks of both the fixed rate and adjustable rate options available through Equifirst; and that plaintiffs voluntarily opted to submit an application for an $87,000 loan with an

---

[7] Plaintiffs also complain that Equifirst did not provide "reasons for denying their credit application(s) prior to the Closing." (Doc. 23 ¶ 55.) This allegation makes no sense, for Equifirst financed plaintiffs' $87,000 mortgage through an adjustable rate loan. Equifirst therefore did not, in fact, deny plaintiffs' credit application. Plaintiffs offer no further explanation for their contention, and the court will reject this complaint as unsupported by the record.

adjustable rate.[8] (Doc. 42 ¶¶ 7-9, 18-21; Doc. 46 ¶¶ 23-24; Doc. 50, Ex. F ¶ 16; Doc. 57 at 2-3 ¶¶ 7-9, 18-19, 21; id. at 12 ¶¶ 23-24.) Plaintiffs thereafter were approved for and received an $87,000 adjustable rate mortgage on the closing date. Thus, plaintiffs applied for the loan that they eventually received; there is simply no evidence of a "counteroffer" present in the record.

In spite of this evidence, plaintiffs seem to suggest that they "applied" for credit by initially conveying to Gisler their desire to obtain a fixed rate mortgage. Even if the court assumes that plaintiffs' initial preference constitutes a "completed application for credit"—a proposition of dubious legal cogency, and one plaintiffs make no serious attempt to support—there is no evidence to suggest that Equifirst provided improper notification of its adjustable rate "counteroffer." The ECOA requires notice of a counteroffer within thirty days of a credit-seeker's completed

---

[8] Plaintiffs contend that Gisler supplied them with a pre-closing good faith estimate of settlement costs which shows that they "were approved and were to receive a fixed rate in line with Plaintiffs' request to Gisler." (Doc. 57 at 23.) The document to which plaintiffs refer does not indicate the type of loan for which plaintiffs applied, let alone their approval for a loan on any specific terms. (See Doc. 50, Ex. M.) Rather, the good faith estimate was created by Gisler and reflects estimates of the charges plaintiffs were likely to incur to close on a fixed rate mortgage. (See Doc. 42 ¶ 41.) Contrary to plaintiffs' assertion, these estimates do not demonstrate that they were initially approved for a fixed rate mortgage. What is more, there is no evidence in the record to suggest that Equifirst—the only defendant against whom plaintiffs levy their ECOA claim—had any role in creating this document or supplying the financial figures contained within. In fact, plaintiffs admit that during the time in question, Gisler was not acting as Equifirst's agent or employee, and that Gisler never claimed to be acting in the employ or on behalf of Equifirst. (See Doc. 50, Ex. F ¶¶ 2, 20-25.) There is simply no evidence that Equifirst had anything to do with Gisler's good faith estimate, eviscerating plaintiffs' argument that "[t]he good faith estimate . . . indicates Plaintiff's [sic] were approved by Equifirst for a fixed rate mortgage," (Doc. 57 at 23).

11

application. § 1691(d)(1). If the closing date falls within this thirty-day window, the ECOA does not require that notice of a counteroffer be provided prior to the date of closing. See Ricciardi, 164 F. App'x at 224; Soslau v. PHH Mortgage Corp., Civ. A. No. 06-1422, 2008 WL 2805606, at *4 (E.D. Pa. July 18, 2008); Miller v. Shore Fin. Servs., Inc., Civ. No. 03-40210, 2006 WL 2828584, at *3 (E.D. Mich. Sept. 29, 2006). It is undisputed that plaintiffs were fully aware that they were obtaining an adjustable rate mortgage at the time of closing.[9] (See Doc. 42 ¶¶ 7-8, 17-18, 21; Doc. 46 ¶¶ 50-51, 57, 67; Doc. 57 at 2-3 ¶¶ 7-8, 17-18, 21; id. at 14-15 ¶¶ 50-51, 57, 67.) Plaintiffs nonetheless accepted the terms of this adjustable rate loan by signing the necessary closing documents. Consequently, whether or not Equifirst's loan is characterized as a "counteroffer," it was knowingly and voluntarily executed by plaintiffs in full compliance with the ECOA; summary judgment is therefore appropriate.

Plaintiffs' remaining claim arises under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. ANN. §§ 201-1 to -9.3. Plaintiffs request that the court assume supplemental jurisdiction over this state law claim, an avenue across which it declines to tread. As explained above, summary judgment is appropriate with respect to plaintiffs' lone federal claim; to retain federal jurisdiction over what would be purely an issue of state law does not serve the interests of judicial economy, convenience, fairness to the instant parties, or comity, see Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) (stating

---

[9] There is no contention that the closing occurred more than thirty days after plaintiffs expressed their preference for a fixed rate loan.

12

that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); see also Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999). Disposition of this cause of action is more suitable to a state forum.

## IV. **Conclusion**

For the foregoing reasons, defendants are entitled to summary judgment on plaintiffs' remaining claims. The allegation that Equifirst violated the ECOA is unsupported by the factual record, which demonstrates plaintiffs' voluntary pursuit and acquisition of an adjustable rate mortgage to purchase their new home. Plaintiffs' remaining cause of action under the UTPCPL implicates only state law and is thus more befitting of resolution in a Pennsylvania tribunal.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge


Dated:     December 1, 2009

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY DOBSON and JESSICA DOBSON,** | : | CIVIL ACTION NO. 1:07-CV-1743 |
| | : | |
| | : | (Judge Conner) |
| **Plaintiffs** | : | |
| | : | |
| v. | : | |
| | : | |
| **COMMONWEALTH FUNDING GROUP, INC., MATT GISLER, and EQUIFIRST CORPORATION,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants** | : | |

## **ORDER**

AND NOW, this 1st day of December, 2009, upon consideration of defendants' motions (Docs. 41, 45) for summary judgment, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motions (Docs. 41, 45) for summary judgment are GRANTED. See FED. R. CIV. P. 56(c).

2. The Clerk of Court is directed to enter JUDGMENT in favor of defendants and against plaintiffs on all claims.

3. The Clerk of Court is directed to CLOSE this case.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge